UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

**NEW YORK LIFE INSURANCE COMPANY**            **CIVIL ACTION**

**VERSUS**            **NO. 12-107**

**MARIE FRANCIVEC LULICH, ET AL.**            **SECTION "K"(2)**

### ORDER AND REASONS

Before the Court is New York Life Insurance Company's Rule 12(b)(6) Motion to Dismiss (Doc. 46). New York Life Insurance Company (" NYLIC") seeks the dismissal of the counterclaims brought against it by Defendants-in-Interpleader, Anthony J. Lulich, Jr. ("Lulich Jr.") and Endeavor Marine, Inc. ("Endeavor") (collectively "Counterclaimants") based on NYLIC's contention that these counterclaims for bad faith penalties and attorneys' fees under La. Rev. Stat. 22:1811 and 22:1973 are facially deficient as Counterclaimants have admitted that there are competing claims to certain death benefits and, as such, interpleader was proper and timely because NYLIC interpleaded the funds within 60 days of receiving "due proof of death." Having reviewed the pleadings, memoranda and the relevant law, the Court finds that while there might be merit in NYLIC's contentions, a Motion to Dismiss is not the proper vehicle to resolve these legal issues. As such, the Court will deny for the motion for the reasons that follow, with the understanding that NYLIC may at the appropriate time seek relief pursuant to Fed. R. Civ. Pro. 56.

**BACKGROUND**

Effective August 23, 1995, NYLIC issued a life insurance policy (" the Policy") with a death benefit of $1,200,000 to Anthony J. Lulich Sr. ("Lulich Sr.") as insured. Lulich Jr. was

named as both owner and first beneficiary of the Policy.[1]  On or about September 11, 1995, NYLIC received a collateral assignment dated August 23, 1995 from Lulich Jr., assigning the Policy to Lumar Marine, Inc. ("Lumar").[2]  The following year on June 3, 1996,  NYLIC received a release of that collateral assignment indicating that Lumar relinquished all interest in the Policy.[3]  Later that year, on September 9, 1996,  NYLIC received another collateral assignment from Lulich Jr., reassigning the Policy to Endeavor.[4]

Lulich Sr. died on October 4, 2011.[5] NYLIC was notified by the Lulich family of Lulich Sr.'s death on October 7, 2011 and received a copy of his death certificate on November 22, 2011.[6]  Ten days later, by e-mail dated December 2, 21011, Lumar put NYLIC on notice that Lumar intended to make a claim for proceeds payable under the Policy which was subsequently confirmed by letter on December 5, 2011.[7]  The proceeds payable under the Policy are $1,390,180.33 plus interest from the date of Lulich Sr.'s death.[8]

On January 17, 2012,  NYLIC instituted the instant action for interpleader based on these competing claims.[9] The Court granted leave to deposit the Policy's death benefits soon thereafter

---

[1] Complaint, ¶12.

[2] Complaint, ¶13.

[3] Complaint, ¶ 14; Rec. Doc. 48, p.3.

[4] Complaint, ¶ 15; Rec. Doc. 48, p. 3.

[5] Complaint, ¶19.

[6] Complaint, ¶20; Affidavit of Tony Sucic, Rec. Doc. 53, Ex. 1 at 1.

[7] Rec. Doc. 1, ¶30, Rec. Doc. 48, p. 3.

[8] Complaint, ¶35.

[9] Rec. Doc. 1, ¶1.

and NYLIC made the deposit.[10] On January 18, 2012, Lulich Jr. and Endeavor filed an appropriate proof of claim form with NYLIC for the death benefits under the Policy.[11]

Lumar filed an Answer to Interpleader and Assertion of Claim on Policy on February 28, 2012. Therein, it claims that the purpose of the collateral assignment was to secure repayment to Lumar from the Lulich Jr. (the named beneficiary) of any and all premium amounts paid by Lumar. It further maintains that it paid premiums for the policy but has never been reimbursed for them under the terms of the collateral assignment and under the terms of the split dollar policy. Lumar further contends that the stated purpose for the purchase and issuance of the policy was to fund a future buy-out of the interest of Lulich, Jr. from the Lulich Companies. Finally, Lumar maintains that a buyout of Lulich, Jr. took place in 2008; however, the funds under the split dollar policy were not used at that time. Thus, Lumar contends that it has a separate claim for reimbursement for the funds paid to Anthony J. Lulich, Jr. for the buyout of his interest in the Lulich companies in 2008. [12]

Lulich Jr. and Endeavor together filed an Answer, Claim Against Interpleader Funds, Counterclaim and Cross-Claim on March 2, 2012.[13] It is that counterclaim that is the focus of this motion. Counterclaimants contend that NYLIC failed to pay timely any claims under the Policy or interplead within sixty day of notice of the insured's death without just cause in

---

[10] Order on Motion to Deposit Funds, Rec. Doc. 31; Original Receipt of Payment, Rec. Doc. 46-2, Ex. A at p. 3.

[11] Rec. Doc. 37, Counterclaim, ¶ VI.

[12] Answer to Interpleader, Rec. Doc. 36 ¶ 14-18.

[13] Rec. Doc. 46, p. 4.

violation of La. Rev. Stat. 22:1811.[14] Counterclaimants also contend that this interpleader is improper because NYLIC specifically pleaded that it received a release of assignment from Lumar on or about June 3, 1996, in which Lumar relinquished all rights to the Policy. As such, Counterclaimants maintain that NYLIC breached its duty of good faith and fair dealing and breached its affirmative duty to adjust claims fairly by failing to pay Counterclaimants the proceeds due in violation of La. Rev. Stat. 22:1973.[15]

It is these two claims that NYLIC move to dismiss.

**STANDARD OF REVIEW**

In considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), the complaint must be liberally construed in favor of the plaintiff, and all facts pleaded in the original complaint must be taken as true. *Campbell v. Wells Fargo Bank, N.A.,* 781 F.2d 440, 442 (5th Cir.1980). In *Bell Atlantic Corporation v. Twombly,* 550 U.S. 544, 563, 127 S.Ct. 1955, 1969 (2007), the Supreme Court "retired" the *Conley v. Gibson,* 355 U.S. 41, 45-46, 78 S.Ct. 99, 101-102, 2 L.Ed.2d 80 (1957), standard for analyzing a motion to dismiss under Rule 12(b)(6) which held that a district court may not dismiss a complaint for failure to state a claim "unless it appears beyond doubt that plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Noting that the *Conley* pleading standard "is best forgotten as an incomplete, negative gloss on an accepted pleading standard," the Supreme Court announced that "once a claim has been stated adequately, it may be supported by showing any set of facts

---

[14]Counterclaim, Rec. Doc. 37, ¶ VIII at 16.

[15]Counterclaim, Cross-Claim, Rec. Doc. 37, ¶VII, IX.

consistent with the allegations of the complaint. *Id.* at 563, 127 S.Ct. at 1969. "To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead 'enough facts to state a claim to relief that is plausible on its face.' " *In Re: Katrina Canal Breaches Litigation,* 495 F.3d 191, 205 (5th Cir.2007) quoting *Bell Atlantic Corp. v. Twombly,* 550 U.S. at 570, 127 S.Ct. at 1974. Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atlantic Corp. v. Twombly,* 550 U.S. at 556, 127 S.Ct. at 1965 (internal citations omitted). "The question therefore is whether in the light most favorable to the plaintiff and with every doubt resolved in his favor, the complaint states any valid claim for relief." *Lowery v. Texas A & M University System,* 117 F.3d 242, 247 (5th Cir.1997) quoting 5 Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure, § 1357, at 601 (1969).

**ANALYSIS**

  **A. Section 1811 Claim**

  Section 1811 of Title 22 of the Louisiana Revised Statutes states:

> All death claims arising under policies of insurance issued or delivered within this state shall be settled by the insurer within sixty days after the date of receipt of due proof of death, and if the insurer fails to do so without just cause, the amount due shall bear interest at the rate of eight percent per annum from the date of receipt of due proof of death by the insurer until paid.

La. Rev. Stat.22:1811. NYLIC in its Complaint states, "On or about October 7, 2011, NYLIC was advised that Anthony J. Lulich, Sr. had died." (Complaint, ¶20). Thus, Counterclaimants maintain, pretermitting whether interpleader was proper, that the sixty day period for payment or filing its interpleader ran in December of 2011. Furthermore, Counterclaimants argue that where

as here  NYLIC states in its Complaint that NYLIC received a release of collateral assignment as to Lumar indicating that Lumar relinquished all interest in the Policy (Complaint ¶14)  and subsequently received another collateral assignment from Lulich Jr. to Endeavor(Complaint ¶15), that there is no "just cause" for the delay as the Lumar claim on its face is without basis.

### 1.  Timeliness of NYLIC's Actions

As noted, Louisiana law mandates that an insurer settle all death claims  within sixty days after the date of receipt of "due proof of death."  La. R.S. 22:1811. However, the Court is unaware and no case has been presented that defines precisely what constitutes "due proof of death."  Obviously, "[e]vidence of the date of receipt of proof of death is essential to an award of penalties[...]."*White v. Trans-World Life Ins. Co.*, 484 So.2d 263, 265 (La. App. 3 Cir. 1986); *Carr v. Port Ship Service, Inc.* 406 So.2d 632, 635 (La. App. 4th Cir. 1981).

One Louisiana court of appeal has noted that ordinarily a death certificate would "seem the usual manner of presenting proof of death."  *Tutorship of Price v. Standard Life Ins. Co.,* 569 So. 2d 261, 266 (La. App. 2 Cir. 1990).  However, it is not clear Louisiana whether a death certificate is the only method by which an insurance company receives "due proof of death." Notice of a claim alone has been found insufficient  to qualify as due proof of death where the deceased's body was never recovered and the only proof was trial testimony of an individual involved in the decedent's murder.   As that court stated, "Although defendant admits receiving notice of a claim . . ., there has been no showing that the defendant ever had due proof that [the insured] was dead.").  *Id.*  In another case, the date suit was filed was used by the court as the

date of receipt of "proof of loss" absent any other evidence before it. *White,* 484 So.2d at 266[16] ("There is no proof in the record as to the date upon which appellant submitted proof of Lillian LeBlanc's death to [the insurer].") Unfortunately, there is no indication what that court would consider as "proof" in that instance.

As previously noted, NYLIC averred in its own pleadings that it was notified of Lulich Sr.'s death in October 7, 2011, and made no mention in its initial pleadings of any other "proof" being required. Timely filing sixty days from that date would have required NYLIC to file its Interpleader in December rather than January of 2012. On the other hand, NYLIC contends that it was justified in its delay since it did not receive Lulich Sr.'s death certificate until January 17, 2012. This "fact" is found in an affidavit which cannot be considered in a Rule 12 context. Based on this record, the Court cannot grant a motion to dismiss the claim as to timeliness of the interpleader being filed.

### 2. Just Cause

Under Louisiana law, it appears that the test as to whether a payment was withheld "without just cause" is:

> one of reasonableness of the defendant's belief that it had a defense to the plaintiff's claim under the policy, *Brooks v. Louisiana & Southern Life Ins. Co.*, 246 So.2d 270 (La. App. 1st Cir. 1971); *Ducote v. Life Ins. Co. of La.*, 245 So.2d 531 (La. App. 3d Cir. 1971), at least where the dispute involves a question of fact and not of law.

*Rayford v. New York Life Ins. Co.*, 359 F. Supp. 139 (E.D.La. 1973). Here, again, the Court cannot hold as a matter of law that NYLIC was reasonable without recourse to materials that are

---

[16] La. Rev. Stat. 22:1811 was renumbered from La. Rev. Stat. 22:656 by Acts 2008, No. 415, § 1, eff. Jan. 1, 2009.

outside of the pleadings. Clearly, competing claims for the proceeds of the Policy were lodged and normally, the timely filing of an interpleader action for the resolution of this kind of dispute is an accepted and necessary practice. *Principal Life Ins. Co. V. Chandler*, 2008 WL 696173 (E.D.La. March 13, 2008) (Feldman, J.) *New York Life Ins. Co. v. Deshotel*, 1995 WL 529838 (E.D.La. Sept. 7, 1995) (Vance, J.). The issue here is whether in light of Lulich, Jr.'s right under the policy language to reassign the policy from Lumar to Endeavor, did Lumar have a claim that would justify NYLIC's placing the funds into the registry of the Court rather than paying these funds directly to the Counterclaimants. Again, this inquiry would require the Court to go far afield from the pleadings to determine the reasonableness of Lumar's claim. As such, this motion cannot be granted pursuant to Fed. R. Civ. P. 12.

### B. Duty of Good Faith and Insurer's Right to Interpleader

Section 1973 of Title 22 of the Louisiana Revised Statutes provides in relevant part:

> A. An insurer . . . owes to his insured a duty of good faith and fair dealing. The insurer has an affirmative duty to adjust claims fairly and promptly and to make a reasonable effort to settle claims with the insured or the claimant, or both. Any insurer who breaches these duties shall be liable for any damages sustained as a result of the breach.
>
> B. Any one of the following acts, if knowingly committed or performed by an insurer, constitutes a breach of the insurer's duties imposed in Subsection A:
> . . .
> (5) Failing to pay the amount of any claim due any person insured by the contract within sixty days after receipt of satisfactory proof of loss from the claimant when such failure is **arbitrary, capricious or without probable cause**.

La. Rev. Stat. 22:1973(A) and (B)(5).[17]

---

[17] Renumbered from R.S. 22:1220 by Acts 2008, No. 415, § 1 eff. Jan. 1, 2009.

Courts interpret the terms "arbitrary and capricious" synonymously with "vexatious", and "[v]exatious refusal to pay means unjustified, without reasonable or probable cause or excuse." *Lundy Enterprises, L.L.C. v. Wausau Underwriters Ins. Co.*, 2009 WL 5217412 (E.D. La. 2009) (quoting *Dickerson v. Lexington Ins. Co.*, 556 F.3d 297-298 (5th Cir. 2009)). However, "an insurer's refusal to pay may be in good faith even though its defense is not sufficient to prevent recovery under the policy." *Tutorship of Price*, 569 So.2d at 266, citing, *Vining v. State Farm Life Insurance Company*, 409 So.2d 1306 (La. App. 2d Cir.1982), writ denied, 412 So.2d 1098 (La. 1982). Whether an insurer acted in good faith is generally considered a factual, not legal, determination. *Lundy Enterprises, L.L.C. V. Wausau Underwriters Ins. Co.*, 2009 WL 5217412 (E.D.La. Dec. 30, 2009) (Lemmon, J.). While as noted, interpleader seems to be a reasonable course of action for NYLIC under the circumstances, the Court cannot make such a determination concerning these counterclaims without reliance on materials outside of the pleadings. Accordingly,

**IT IS ORDERED** that New York Life Insurance Company's Rule 12(b)(6) Motion to Dismiss (Doc. 46) is **DENIED**.

New Orleans, Louisiana, this 7th day of August, 2012.

**STANWOOD R. DUVAL, JR.
UNITED STATES DISTRICT COURT JUDGE**